IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:14-CR-00109-F-1

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| ROBERT PAUL RITZIE, | ) |
| Defendant. | ) |

This matter is before the court on Robert Paul Ritzie's Motion to Suppress [DE-30]. The issues have been fully briefed and are now ripe for ruling. For the reasons more fully stated below, Ritzie's Motion to Suppress is DENIED.

### Findings of Fact[1]

On August 15, 2013, Sgt. J. Collier and Officer J. Rowan were traveling South on U.S. 158 Business/U.S. 1 Business in Henderson, North Carolina. Sgt. Collier and Officer Rowan observed a gray Chevy Malibu two vehicles ahead of them that was following too closely to the vehicle ahead of it. The Malibu began to cross the center line and then made an erratic movement to the right that caused the Malibu to run over the fog line. It appeared the driver of the Malibu was under the influence of alcohol or illegal drugs, so Sgt. Collier and Officer Rowan initiated a traffic stop.

Officer Rowan approached the vehicle on the passenger side and informed the driver that he had been stopped for following too closely and failure to maintain lane control. Officer Rowan asked the driver for his identification and registration. Officer Rowan asked the driver to

---

[1]The court's findings of fact come from the parties' representations in Ritzie's Motion to Suppress and the Government's Response, which includes exhibits. Because the facts in this case are not in dispute, the court declines to hold an evidentiary hearing.

step back to the patrol vehicle while Sgt. Collier issued him a warning citation.

The driver of the Malibu was identified as Robert Paul Ritzie. Ritzie stated that he was not under the influence of alcohol or drugs, and Officer Rowan did not smell any alcohol on him. Ritzie further stated that he was tired because he had been traveling from New Jersey. Ritzie explained that he left in the afternoon on August 14, 2013, the day before, to take his girlfriend's children to their grandparents in New Jersey.

The passenger in the car was Ritzie's girlfriend, and her story was inconsistent with that provided by Ritzie. Specifically, Ritzie's girlfriend stated that she and Ritzie left for New Jersey at night and that it was a couple of days before.

Officer Rowan asked Ritzie if he had ever been arrested. Ritzie stated, "Yes, back in the day." When asked what he was arrested for, Ritzie responded that he was arrested for trafficking cocaine.

Sgt. Collier advised Ritzie that he was getting a warning ticket for following too close and would be released. Sgt. Collier returned Ritzie's identification and handed him the warning citation. Sgt. Collier advised Ritzie that he was free to leave. Sgt. Collier then asked Ritzie if he could ask him one more question. Ritzie responded "yea." Sgt. Collier proceeded to ask Ritzie if he had anything illegal, such as weapons or drugs, in the vehicle. Ritzie responded, "No, you can search if you want. There is nothing illegal in the vehicle." Officer Rowan asked Ritzie and his girlfriend to step back to the patrol vehicle while the vehicle was searched.

During his search of the engine compartment, Officer Rowan noticed that the screws to the air box were not screwed in all the way. Officer Rowan also noticed that the screws showed numerous tool marks, which was unusual for a new rental vehicle. Officer Rowan located a

2

screw driver in the passenger area of the Malibu that matched the screws in the lid of the filter. Officer Rowan unscrewed the air box and lifted the lid. Officer Rowan discovered a white t-shirt wrapped around a gallon size Ziploc bag containing eighty-four (84) bricks of heroin.

## Procedural Background

On June 10, 2014, Ritzie was charged in a two-count indictment. *See* Indictment [DE-1]. In Count One, Ritzie was charged with conspiracy to knowingly and intentionally distribute and possess with the intent to distribute heroin, a Schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1). Count Two charges Ritzie with knowingly and intentionally possessing with the intent to distribute a quantity of heroin, a Schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1).

Ritzie filed the instant Motion to Suppress [DE-30] on July 31, 2014. On August 12, 2014, the Government filed a Response [DE-31].

## Discussion

In his Motion to Suppress, Ritzie argues that the search, seizures, and arrest on August 15, 2013 were unlawful for two reasons. [DE-30 at 3.] First, Ritzie contends that the officers had no probable cause or other lawful justification for the search of the vehicle after concluding the business for which they stopped the vehicle, returning Ritzie's paperwork to him, and handing him a warning citation. *Id.* Second, Ritzie argues that the search of the engine compartment, which included the dismantling of equipment under the hood, was beyond the scope of any consent that Ritzie allegedly gave for a search of the vehicle. *Id.* at 4. Ritzie concludes that this court should suppress all physical items seized and all statements obtained as a result of the August 15, 2013 search and seizures. *Id.* at 10.

3

The Fourth Amendment protects individuals from "unreasonable searches and seizures." U.S. Const. amend. IV. Warrantless searches are per se unreasonable unless a valid exception to the warrant requirement is applicable. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *United States v. Lattimore*, 87 F.3d 647, 650 (4th Cir. 1996). A search conducted pursuant to consent is an exception to the warrant requirement. *Schneckloth*, 412 U.S. at 219 (citing *Davis v. United States*, 328 U.S. 582, 593-94 (1946)).

**The Detention and Search of the Vehicle Were Legally Justified.**

In his Motion to Suppress, Ritzie concedes that the initial stop of the vehicle appears to be justified, and he does not challenge that portion of his encounter with law enforcement. [DE-30 at 4-5.] The court agrees and finds that Ritzie was legally stopped for following too close. *See Whren v. United States*, 517 U.S. 806, 810 (1996) ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.")

In his first argument, Ritzie contends that Sgt. Collier and Officer Rowan had no probable cause or other lawful justification for the search of the vehicle after concluding the business for which they stopped the vehicle, returning Ritzie's paperwork to him, and handing him a warning citation. [DE-30 at 3.]

Even where an initial stop is supported by probable cause, after the officer satisfies the purpose for which the stop was made and issues a citation or warning, the officer must allow the driver to go on his way without further delay, and continued detention for questioning is illegal unless there is reasonable suspicion of a serious crime. *United States v. Foreman*, 369 F.3d 776, 781 (4th Cir. 2004); *United States v. Rusher*, 966 F.2d 868, 876-77 (4th Cir. 1992). Under

4

*Florida v. Bostick*, 501 U.S. 429 (1991), an encounter is not consensual and triggers Fourth Amendment scrutiny if "the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Id.* at 439. The proper inquiry involves an objective analysis of the totality of the circumstances. *United States v. Weaver*, 282 F.3d 302, 309-10 (4th Cir. 2002).

This case is strikingly similar to *United States v. Meikle*, 407 F.3d 670 (4th Cir. 2005). In *Meikle*, the officer completed the warning citation, returned Meikle's license and registration, and shook Meikle's hand. 407 F.3d at 671. As Meikle was walking back towards his vehicle, the officer asked Meikle if he could talk with him again. *Id.* Meikle responded affirmatively. *Id.* The officer then asked whether there were any illegal drugs in the vehicle. *Id.* Meikle stuttered "no" in response. *Id.* The officer then asked if he could search Meikle's vehicle, and Meikle consented. *Id.* at 671-72.

Meikle argued on appeal that the traffic stop had not become a consensual encounter at the time he consented to the search of his vehicle because the stop violated *Terry v. Ohio*, 392 U.S. 1 (1968) by exceeding the limits of proper law enforcement conduct in a routine traffic stop. 407 F.3d at 672. The Fourth Circuit disagreed, concluding that the encounter was purely consensual because under *Bostick*, Meikle understood that he was free to leave. *Id.* at 673-74.

In this case, Sgt. Collier properly terminated the traffic stop when he returned Ritzie's identification, handed him the warning citation, and advised him that he was free to leave. *See United States v. Farrior*, 535 F.3d 210, 219 (4th Cir. 2008) (noting that the act of returning the license and registration "strongly indicates that the encounter was consensual and that no seizure occurred within the meaning of the Fourth Amendment"); *United States v. Rusher*, 966 F.2d 868,

5

872 (4th Cir. 1992) (concluding that the search was consensual where the officer issued a warning, returned the defendant's driver's license and informed him that he was "free to go" before seeking consent to search the vehicle). Therefore, Ritzie voluntarily gave his consent to the search after the traffic stop had become a consensual encounter.

**The Search Did Not Exceed the Scope of Ritzie's Consent.**

In his second and final argument, Ritzie contends that the search of the engine compartment, which included the dismantling of equipment under the hood, was beyond the scope of any consent that Ritzie allegedly gave for a search of the vehicle. [DE-30 at 4.]

Any search within the scope of a defendant's voluntary consent is constitutionally permissible. *United States v. Ortiz*, 669 F.3d 439, 445 (4th Cir. 2012) (citing *Schneckloth*, 412 U.S. at 222). In those cases where a defendant gives general, unqualified consent for the search of a particular area, the officer need not return to ask for additional consent in order to search a closed container that is contained within. *United States v. Jones*, 356 F.3d 529, 534 (4th Cir. 2004). "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness-what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S. 248, 251 (1991).

The court finds *Ortiz* to be instructive. In *Ortiz*, Ortiz gave consent to officers to search for signs of auto theft or tampering. 669 F.3d at 447. The district court concluded that the search by officers, which included lifting up the rear seat to locate the concealed VIN, exceeded the scope of Ortiz's consent. *Id.* The district court held that a reasonable person would have "'no reason to anticipate'" that a search for signs of auto theft or tampering would involve subjecting

6

the "'entire vehicle'" to such an "'intrusive search.'" *Id.* The Fourth Circuit disagreed, holding that by giving a general consent to search for signs of theft or tampering, Ortiz "effectively gave the officers consent to search for evidence of theft or tampering as a reasonable officer would find necessary in conducting such a search." *Id.* at 448.

In this case, Ritzie's statement that "you can search if you want" was general in nature and included no restrictions on the scope of the consent to search the vehicle. The court concludes that a reasonable officer would find it necessary to search the engine compartment during a thorough search of a vehicle. Moreover, Officer Rowan was put on notice that further inspection was warranted when he noticed the screws to the air box were not in all the way and showed numerous tool marks. For these reasons, the court finds that the search of the vehicle's engine compartment, which included the dismantling of equipment under the hood, fell within the scope of the consent given by Ritzie.

### Conclusion

In light of the foregoing, Ritzie's Motion to Suppress [DE-30] is DENIED.

SO ORDERED.

This, the 27th day of August, 2014.

*James C. Fox*
JAMES C. FOX
Senior United States District Judge

7